**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DARLENE L. WARREN** | § | |
| | § | |
| **V.** | § | |
| | § | **A-09-CA-403-LY** |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATED MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration, filed on May 19, 2009 (Clerk's Doc. No. 4);  Plaintiff's Brief in Opposition to the Commissioner's Decision, filed on December 10, 2009 (Clerk's Doc. No. 21); and Defendant's Brief in Support of the Commissioner's Decision, filed on January 26, 2010 (Clerk's Doc. No. 22).  Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  GENERAL BACKGROUND

On August 23, 2006, Plaintiff Darlene L. Warren ("Plaintiff") filed an application for disability benefits under Title XVI of the Social Security Act (the "Act"), alleging an inability to work since January 31, 2000.  Plaintiff claims that she is disabled because of arthritis, headaches and

due to the fact that her right leg is shorter than her left leg.  Plaintiff's Application was denied initially on October 27, 2006, and upon reconsideration on December 28, 2006.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 14, 2008.  The ALJ issued an unfavorable decision dated December 15, 2008, finding that Plaintiff was not disabled within the meaning of the Act.  The Appeals Council declined Plaintiff's Request for Review by notice on March 18, 2009, making it the final decision of the Commissioner.  On May 19, 2009, Plaintiff brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying him benefits under the Act.

## II.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

On October 14, 2008, Administrative Law Judge James R. Blinn, Jr. held a video hearing on Plaintiff's application for benefits.  Plaintiff testified at the hearing and was represented by her attorney, Susan L. Carpenter.[1]  Barbara J. Felkins, a medical expert, and Calvin Turner, a vocational expert, also appeared and testified at the hearing. In his written decision following the hearing, the ALJ found that Plaintiff has severe impairments of arthritis, dysthymic disorder and borderline intellectual functioning. Tr. 12. Although the ALJ found that the combination of Plaintiff's impairments has a more than minimal effect on her ability to work, he concluded that she did not have an impairment or combination of impairments that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity to: stand and walk four hours in an eight hour period at four hour intervals, sit for four hours in an eight hour period at one hour intervals,  lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, could not climb ladders ropes or scaffolds and must

---

[1] Plaintiff is now represented by attorney Mary Ellen Felps.

avoid heights and hazardous moving machinery, and that she is limited to occasional fingering and frequent handling but movements must be varied.  Lastly, the ALJ found that Plaintiff retains the ability to understand and carry out simple instructions, interact appropriately with coworkers and supervisors and to adapt to a routine work environment.  Tr. 13.

After considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that she was unable to perform her past relevant work as a cook, but that she could perform certain unskilled light work, such as an election clerk, call out operator and counter clerk.  Tr. 18.  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  *Id.*

### III.  ISSUES BEFORE THE COURT

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards.  Specifically, Plaintiff argues that substantial medical evidence does not support the Commissioner's finding in regard to her residual functional capacity. In addition, Plaintiff argues that substantial evidence does not support the ALJ's finding that she could perform certain unskilled light work.

### IV.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Courts weigh four elements of proof when determining whether

there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## V. ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999). First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment of combination of impairments that is severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to her past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering

the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant acquits her responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets this burden, the claimant must then prove she in fact cannot perform the alternate work. *Id.*

**A.     Does substantial evidence support the ALJ's finding that Plaintiff has the RFC to perform a limited range of unskilled light work?**

The ALJ is responsible for determining the claimant's residual functional capacity ("RFC"). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. § 404.1546. The regulations require the ALJ to determine the RFC of the claimant by considering all of the relevant evidence and addressing the claimant's exertional and non-exertional limitations. *See* 20 C.F.R. § 404.1545; Social Security Ruling 96-8p. In accordance with the regulations, afer reviewing the medical evidence, Plaintiff's daily activities, and hearing testimony from the Plaintiff, the vocational expert, and the medical expert, the ALJ found that Plaintiff retained the RFC to perform a limited range of unskilled light work. Specifically, the ALJ found that Plaintiff had the residual functional capacity to: stand and walk for four hours in an eight hour period at four hour intervals; sit for four hours in an eight hour period at one hour intervals; lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and occasional fingering and frequent handling with varied movements. However, he also found that Plaintiff would not be able to climb ladders, ropes or scaffolds and that she must avoid heights and hazardous moving machinery. Regarding her mental capacity, the ALJ concluded that Plaintiff retains the ability to understand and carry out simple instructions, interact appropriately with co-workers and supervisors and to adapt to a routine work environment. Tr. 13.

Plaintiff argues that the ALJ's finding that Plaintiff retained the RFC to perform a limited range of light work was not supported by substantial evidence. Specifically, Plaintiff argues that in determining her RFC, the ALJ erred by: (1) failing to fully consider her mental limitations and her diagnoses of somatoform and dysthymic disorders, and (2) concluding that Plaintiff had the physical capabilities to perform light, unskilled work.

### 1.    Plaintiff's Mental Limitations

Plaintiff first argues that the ALJ failed to fully consider her mental limitations in determining her RFC. Specifically, Plaintiff contends that the ALJ failed to sufficiently address the Psychological Consultative Report prepared by Dr. Gary Brooks, Ph.D and, in particular, his diagnosis of borderline intellectual functioning.

Dr. Brooks performed a psychological consultative examination of Plaintiff on February 8, 2008, during which Plaintiff underwent a series of intelligence and psychological tests, including the Wechsler Adult Intelligence Scale-III, Woodcock-Johnson-III, Trial Making Test A&B, Wechsler Memory Scale-III and Minnesota Multiphasic Personality Inventory-2. See Psychological Consultative Examination Report by Dr. Gary Brooks, Ph. D. (Tr. 299- 305). Based upon Plaintiff's test results, including a full scale IQ of 74, Dr. Brooks diagnosed Plaintiff with dysthymic disorder,[2] somatoform disorder,[3] borderline intellectual functioning, moderate psychological stressors and a

---

[2]Dysthymic disorder is a "chronic disturbance of mood characterized by mild depression or loss of interest in usual activities." STEDMAN'S MEDICAL DICTIONARY 526 (27th ed. 2000).

[3]Somatoform disorder is "a group of disorders in which physical symptoms suggesting physical disorders for which there are no demonstrable organic findings or known physiologic mechanisms, and for which there is positive evidence, or a strong presumption that the symptoms are linked to psychological factors; e.g., hysteria, conversion disorder, hypochondriasis, pain disorder, somatization disorder, body dysmorphic disorder, and Briquet syndrome." STEDMAN'S MEDICAL DICTIONARY 528 (27th ed. 2000). The regulations define it as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 12.07).

Global Assessment of Functioning "GAF"[4] of 50.  Although  Dr. Brooks diagnosed Plaintiff with

the above, he did not conclude that the conditions rendered Plaintiff "disabled."[5]   Instead, Dr.

Brooks diagnosed Plaintiff with "moderate intellectual limitations" overall and made the following

prognosis:

> [Plaintiff] apparently has had multiple physical complaints, but only limited evidence
> of physical impairment.  Her test results indicate borderline intellectual functioning,
> with commensurate impairment in terms of academic abilities and memory
> functioning.  Her MMPI testing is very difficult to interpret because of a very high
> level of problem endorsement.  It seems likely that this woman has low levels of
> anxiety and depression that she poorly comprehends and she probably translates them
> into physical complaints. *It does not appear that there are any extreme psychiatric
> impairments.  Although she is limited, I believe should be considered competent.*

Tr. 303, 305 (emphasis added).  Dr. Brooks further opined that Plaintiff was "capable of managing

her daily affairs and providing for her children."  Tr. 301.

The ALJ discussed Dr. Brooks' findings in great detail, including Dr. Brook's diagnoses and

his assessment of Plaintiff's GAF.  In fact, the ALJ agreed with Dr. Brooks' findings with regard to

---

[4]GAF is a standardized measure of psychological, social, and occupational functioning used
in assessing a patient's mental health. See *Boyd v. Apfel*, 239 F.3d 698, 700 n. 2 (5th Cir. 2001). The
GAF scale ranges from 100, denoting superior functioning, to 1, indicating that the patient is in
persistent danger of severely hurting herself or others, has a persistent inability to maintain minimal
personal hygiene, or has engaged in a serious suicidal act with a clear expectation of death. American
Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994)

[5]Even if Dr. Brooks had found that Plaintiff was disabled, the ALJ would not have been
required to give Dr. Brooks' opinions "controlling weight" under the regulations since Dr. Brooks
was not Plaintiff's treating physician but instead a consultative psychologist who examined Plaintiff
on one occasion.  *See* 20 C.F.R. § 416.902 & 416.907(d)(2).  While the regulations provide that all
medical opinions are to be considered in determining the disability status of a benefits claimant, 20
C.F.R. §§ 404.1527(b), 416.927(b), opinions on ultimate issues, such as disability status are reserved
exclusively to the ALJ. 20 C.F.R. §§  404.1527(e)(1), 416.927(e)(1).   The ALJ has the sole
responsibility for determining a claimant's disability status and the ALJ "will not give any special
significance to the source of an opinion on issues reserved to the Commissioner" including a
claimant's residual functional capacity, which is a finding expressly reserved to the Commissioner.
20 C.F.R. §§ 404.1527(e); *Cain v. Barnhart*, 193 Fed. Appx. 357, 360 (5th Cir. 2006).

Plaintiff's borderline intellectual functioning and dysthymic disorder.  *See* p. 4 of ALJ's Opinion (finding that "the claimant has borderline intellectual function and dysthymia.").  The ALJ clearly recognized Plaintiff's mental limitations and thus limited her RFC to unskilled light work and the ability to understand and carry out only "simple instructions."  While the ALJ found that Plaintiff indeed had borderline intellectual functioning, he did not find that Plaintiff's mental impairments were disabling.  Instead, he reasoned that "the evidence failed to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled."  ALJ Opinion at p. 7.  In making his RFC determination, the ALJ pointed out that Dr. Brooks had noted in his report that Plaintiff often exaggerated her symptoms and was only "judged to be a limited informant." Tr. 299.  For example, Dr. Brooks noted that:

> Overall, she produced a highly elevated profile, with endorsement of a great many pathological items.  Her profile indicated extreme endorsement of somatic symptoms and the likelihood of exaggeration in many areas.  She described herself as hopeless, helpless, and extremely anxious. This result is highly inconsistent with what she reported in interview.

Tr. 304.  Thus, some of Plaintiff's test scores may not have been entirely reliable.

Regardless, Plaintiff's below-average intelligence tests do not demonstrate that Plaintiff is disabled. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (holding that claimant's below-average IQ of 72 did not mean that claimant was entirely unable to perform light or sedentary work). As the Fifth Circuit has stated, "below-average intelligence alone does not constitute a non-exertional impairment." *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990)).  Although mental retardation qualifies as a non-exertional impairment under the Listing of Impairments, the evidence of record does not indicate that Plaintiff is mentally retarded.  *See* 20 C.F.R. pt. 404, subpt.

8

P, app. 1, § 12.05.[6]   Moreover, Plaintiff has failed to demonstrate that her low IQ score of 74 prevents her from performing the jobs identified by the ALJ.[7]   Based upon the foregoing, the Court finds that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's borderline intelligence did not prevent her from performing all unskilled light work.

In support of her argument that she is unable to perform light work, Plaintiff relies heavily on the fact that Dr. Brooks assigned her a GAF of 50.   However, like a low IQ score, "a low GAF score is not determinative of a disability."   *Nickerson v. Astrue*, 2009 WL 321298 at * 5 (N.D. Tex. Feb. 6, 2009).   "While the GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence." *Alvarez v. Barnhart*, 2002 WL 31466411 at * 8 (W.D. Tex. Oct. 2, 2002).   While Dr. Brooks subjectively assigned Plaintiff a GAF of 50,[8] he failed to describe in his report how he assessed this score.   The Court first notes that Dr. Brooks' low GAF rating is not entirely reliable since Plaintiff was guilty of

---

[6]To meet Listing 12.05 for mental retardation, an individual (1) must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22" *and* (2) must satisfy the criteria listed in Subsection A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.   The required level of severity for mental retardation is met when the claimant has a "valid verbal, performance, or full scale IQ of 59 or less." *Id.* at §12.05(B).

[7]The vocational expert's testimony supports the ALJ's finding regarding Plaintiff's RFC. Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's educational background, with the ability to only understand and carry out simple instructions would be able to perform the unskilled light jobs of election clerk, counter clerk and callout operator. Tr. 80-82.

[8]A GAF Score in the range of 41 to 50 represents "[s]erious symptoms" (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Brown v. Barnhart*, 285 F. Supp.2d 919, 924 n. 7 (S.D. Tex. 2003) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994)).

exaggerating her symptoms and ailments during her evaluation, as Dr. Brooks acknowledged in his report. For example, Dr. Brooks noted that some of Plaintiff's test results were "difficult to interpret because of a high level of problem endorsement." Tr. 305.

Moreover, Dr. Brook's low GAF assessment is undermined by the objective findings in his report. *See Foster v. Astrue*, 2008 WL 1983424 at * 2 (5th Cir. May 8, 2008) (finding that examining psychologist's—also Dr. Brooks—GAF rating of 48 was undermined by the objective findings in his report such as that plaintiff's depression was not that severe). For example, Dr. Brooks noted that Plaintiff "made good eye contact during the examination and seemed reasonably motivated." Tr. 301. Dr. Brooks further noted that Plaintiff's "mood  appeared to be only mildly dysphoric." While Plaintiff's cognitive functions seemed slow, he found that she had "adequate judgment." Tr. 301. In addition, Dr. Brooks found that her cognitive functioning was only "mildly limited" and that her working memory was in the low average to average range. Tr. 304. "Overall, it appears that she has moderate intellectual limitations." Tr. 303. Although he found that Plaintiff had "low levels of anxiety and depression" he concluded that she did not have "any extreme psychiatric impairments." Tr. 305. He further found that Plaintiff was "capable of managing her daily affair[s] and providing for her children," and "[a]lthough she is limited, I believe she should be considered competent." Tr. 301, 305. Thus, Dr. Brooks' objective findings that Plaintiff only had moderate mental limitations seems inconsistent with a GAF score of 50. Based upon the foregoing, the Court finds that the ALJ did not err in failing to find that Plaintiff was not capable of performing light work based on Dr. Brooks' low GAF rating and/or based on her mental limitations.

###### 2.      Physical Limitations

Plaintiff also argues that the ALJ's RFC assessment was erroneous because he failed to adopt the consulting physician's opinion with regard to Plaintiff's RFC.  Plaintiff alleges that the consulting physician's findings would preclude her from performing any light work.  While the ALJ adopted many of the consulting physician's findings, the ALJ ultimately found that Plaintiff was capable of performing some light work

Dr. Rodney J. Simonsen, the consulting physical medicine and rehabilitation physician, completed an RFC assessment of Plaintiff on February 14, 2008.  Dr. Simonsen opined that Plaintiff could sit, stand or walk for 30-45 minutes at a time, could occasionally reach, handle, finger, feel, push/pull with her hands, could occasionally climb stairs and ramps, but based on Plaintiff's testimony, could *never* climb ladders or scaffolds, nor balance, stoop, kneel, crouch or crawl and was precluded from lifting or carrying any weight. Tr. 320-23.  Dr. Simonsen further opined that based on Plaintiff's subjective testimony, Plaintiff would only be able to ambulate without the use of a cane for 10 to 20 feet, and that she should not be exposed to unprotected heights, moving mechanical parts, humidity, wetness, dust, odors or fumes, extreme cold or heat, and vibrations. Tr. 321, 324.

As the ALJ noted, not all of Dr. Simonsen's RFC assessments—which were based mainly on Plaintiff's subjective testimony—align with the objective findings in his report. For example, although Plaintiff reported to Dr. Simonsen that she was disabled due to arthritis, "had numerous complaints" and "had a lot to say about her health problems," his examination of Plaintiff revealed that Plaintiff  "appeared in no acute distress" and that she "was a very strong appearing lady." Tr. 314.  Although Dr. Simonsen concluded that Plaintiff had severe impairments with regard to her walking and carrying, his physical examination of Plaintiff did not support such findings.  For example, Dr. Simonsen reported the following with regard to Plaintiff's physical examination:

> Examination of her extremities shows essentially full range of motion without any significant soreness, major joint problems or edema.  Her hips and knees were normal to examination both with movement and stability.  There was no pain with internal rotation of either hip.  She had some minor complaints of arthritic type pain in her hands and feet, but not severe.  She did have full range of motion of her shoulders.  Her gait was fairly normal.  But she did tend to limp on the right leg, she was using the cane on the right, when it was changed to the left her limp improved.  Otherwise her neurologic exam is normal.  She has normal bulk in her muscles, normal strength, normal sensation, and normal reflexes.

Tr. 314.  X-Rays of Plaintiff also proved to be normal.  Dr. Simonsen noted that x-rays of her feet and  ankles showed no acute or significant findings.  Tr. 315.  Dr. Simonsen also added that there were no major arthritic changes in Plaintiff's joints.  Tr. 315.  When there are inconsistencies between a physician's RFC findings and the objective medical evidence, an ALJ may properly choose not to adopt all the physician's findings with regard to a plaintiff's RFC.  That is precisely what occurred in this case.

And despite Plaintiff's complaints of arthritis, migraines and difficulty walking, the Plaintiff's other medical records do not show that she was ever diagnosed with a severe impairment or that she received routine medical treatment for any of her alleged ailments.  Other than minor colds and rashes, the medical records do not support Plaintiff's allegations of disability.  For example, Dr. Tony Shallin, M.D., who performed the internal medicine consultative examination of Plaintiff on October 11, 2006, observed that Plaintiff did not appear in any acute distress and noted that she was alert and oriented.  Tr. 248.  While an x-ray of Plaintiff's right hip showed a mild deformity of the left femur, there was no evidence of a fracture and no significant degenerative changes.  Tr. 247.  Dr. Shallin opined that Plaintiff's x-rays "do not support the decreased function which [Plaintiff] reports." Tr. 249.  Dr. Shallin concluded that "Overall she seems able to work at all except extremely strenuous activity," and that "[w]alking should be limited to not too many miles a day."  *Id.*

The medical records also show that Plaintiff's treating physicians did not find that any of Plaintiff's alleged ailments prevented her from working. For example, an examination of Plaintiff on March 9, 2006, revealed that Plaintiff was "alert and oriented, well nourished, healthy appearing," had normal affect and was under "no acute distress." Tr. 272. Although Plaintiff complained of back pain, an x-ray of Plaintiff's spine on January 5, 2007, showed that Plaintiff only had "mild degenerative changes" in her lumbosacral spine with "no evidence of compression fracture or spondylolisthesis." Tr. 291. Further, an x-ray of Plaintiff's cervical spine also showed only mild degenerative disc disease at C5-6. Tr. 293. Although Plaintiff called her treating physician in March 2006 to obtain a doctor's note excusing her from work for a week, the physician declined and reported that Plaintiff could return to work the following day. Tr. 274-75.

The testimony at Plaintiff's hearing also supports the ALJ's RFC assessment. The Medical Expert noted that there were no objective findings in the record which supported the extent of Plaintiff's alleged impairments. The Medical Expert opined that Plaintiff's impairments would not prevent her from working and that she could perform "simple work and light RFC with only occasional posturals giving her the benefit of the doubt about her possible unrecognized arthritis." Tr. 37. In addition, the Vocational Expert testified that an individual with Plaintiff's age, education, work experience and RFC could perform the jobs of election clerk, call out operator and counter clerk.

Given all of the above, and given that the Court's role is not to decide the case in the first instance, but rather to determine whether there is substantial evidence to support the ALJ's findings, the Court concludes that the ALJ's finding that Plaintiff has the RFC to perform a limited range of unskilled light work is supported by substantial evidence.

**B.      Was the ALJ required to make a separate finding as to Plaintiff's ability to maintain employment?**

Plaintiff also argues that the ALJ erred by failing to make a finding that Plaintiff could not only obtain, but also *maintain* employment for a significant period of time.  Plaintiff relies on the Fifth Circuit's holding in *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), in which the Court held that a person may qualify as disabled under the act if she cannot sustain a job for a significant period of time, even if she is sometimes capable of working for short spurts.  In *Singletary*, the applicant suffered from a severe mental impairment and could sometimes work for short periods of time, but he could never hold a job for long periods.  The Fifth Circuit held that working in short spurts only did not constitute "substantial gainful activity" and that the applicant therefore might qualify as "disabled."  However, in *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003), the Fifth Circuit clarified that the ALJ does not have to articulate separate and distinct findings on "obtaining" and "maintaining" a job in every Social Security case.  The Court explained:

> *Singletary* simply interpreted "disability" under the Act to apply to cases in which a person could work for short periods, but could not hold a job.  It did not require. . . separate findings on "obtaining" and "maintaining" a job in every case, even cases in which the applicant does not suggest that there is any difference between the issue of his ability to work and his ability to sustain work.

*Id.* at 621.  *See also, Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) ("We do not understand *Watson* . . . to require an explicit finding in every case that the claimant can not only engage in substantial gainful activity but maintain that employment as well.").

Plaintiff here does not allege that she can only work for short spans of time, but rather contends that she cannot work at all.  Thus, *Singletary* does not apply in this case.  Accordingly, the ALJ was not required to make a specific finding in this case that Plaintiff could also maintain employment.

**C.     Is there a conflict between the jobs identified by the ALJ and the DOT?**

As noted above, in assessing Plaintiff's RFC, the ALJ found that Plaintiff "retains the ability to understand and carry out simple instructions, interact appropriately with coworkers and supervisors and to adapt to a routine work environment."  Tr. 13.   Accordingly, he opined that Plaintiff had the RFC to perform a limited range of light unskilled work including working as an election clerk, call out operator and counter clerk.  Plaintiff argues that the descriptions of the above-jobs in the Dictionary of Occupational Titles ("DOT") require a higher *level of reasoning* than that allowed by the ALJ's RFC.  Plaintiff contends that because the ALJ's RFC assessment limited her to understanding only "simple instructions," she is limited to performing jobs with a DOT reasoning level of one.[9]  Plaintiff argues that she cannot perform the jobs identified by the ALJ since they all require a reasoning level of two or three.

The Fifth Circuit has held that claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. *Carey v. Apfel*, 230 F.3d 131, 142  (5th Cir. 2000).  Because Plaintiff did not raise this issue during her administrative hearings, she is precluded from presenting her claim now.  Regardless, Plaintiff's claim should also be denied on the merits.

The DOT classifies every listed job as requiring a reasoning ability level from one to six. The DOT states that the position of counter clerk (Code:249.366-010) requires a reasoning level of

---

[9]The DOT defines reasoning level one, as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," and to "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT at 1011 (4th Ed., Rev. 1991).

two which is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT at 1011 (4th Ed., Rev. 1991). The ability to perform simple, non-complex work tasks is consistent with a reasoning level of two. See, e.g., *Hackett v. Burnett*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that level-two reasoning is consistent with "simple and routine work tasks."); *Fletcher v. Astrue*, 2010 WL 1644877 at *4-5 (N.D. Tex. March 31, 2010) (finding that claimant would be able to perform jobs with level two reasoning requirement even though claimant was limited to non-complex work, since "the ability to perform non-complex work is consistent with reasoning level two."); *Meissl v. Barnhart*, 403 F. Supp.2d 981, 983-84 (C.D. Cal. 2005) (holding that vocational expert's testimony that claimant—who was restricted to simple and repetitive tasks—could perform job requiring a reasoning level of two was not inconsistent with the DOT); *Flaherty v. Halter*, 182 F. Supp.2d 824, 850 (D. Minn. 2001) (claimant who was capable of performing simple, routine, repetitive work was capable of performing jobs that require reasoning level two). Accordingly, the ALJ's determination that the Plaintiff could only perform jobs with "simple instructions" is not inconsistent with the finding that Plaintiff could perform the job of counter clerk Thus, Plaintiff's argument that the DOT description of counter clerk requires a higher reasoning level than the RFC assigned to her by the ALJ is without merit.

The Court need not address Plaintiff's reasoning level argument with regard to the other two jobs identified by the ALJ since the ALJ has identified "gainful employment the claimant is capable of performing." *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).[10] See *Hoelck v. Barnhart*, 2007 WL 496850 at *3 (W.D. Tex. February 6, 2007) (noting that the ALJ need only identify one job that

---

[10]Plaintiff is correct that there appears to be a conflict between the Plaintiff's RFC and the level of reasoning (three) required by the jobs of call out operator and election clerk.

exists in significant numbers in the national economy to satisfy his burden), *aff'd*, 261 Fed. Appx. 683 (5th Cir. Jan 7, 2008). Plaintiff has failed to rebut the ALJ's finding that she could perform the job of counter clerk.

## VI.  CONCLUSION

While this is a closer-than-average case, the Court concludes that there is substantial evidence in the record to support the conclusions reached by the ALJ here. While the Court's own conclusions if faced with the same evidence may have been different, that is not the standard of review in this administrative appeal. The conclusions reached by the ALJ were not unreasonable, and there was evidence before him to support those conclusions. Under the applicable law, the Court is therefore required to recommend that the decision be affirmed.

## VII.  RECOMMENDATION

Based upon the foregoing, the Court finds that the Commissioner's decision is supported by substantial evidence and correctly applies the relevant legal standards. Accordingly, the Court **RECOMMENDS** that the District Court **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## VIII.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of July, 2010.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE